In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 03-355V
(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
PETER LOUTOS, II and                          *   Filed: December 18, 2015
RAMONA LOUTOS, as parents and                 *
natural guardians of P.A.L., III, a minor,    *
                                              *   Special Master Corcoran
            Petitioners,                      *
                                              *
      v.                                      *   Decision; Interim Costs Award;
                                              *   Expert Costs; Pro Se Claimant.
                                              *
SECRETARY OF HEALTH AND                       *
HUMAN SERVICES,                               *
                                              *
            Respondent.                       *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Peter and Ramona Loutos*, Port St. Lucie, FL, *pro se* Petitioners.

*Linda S. Renzi*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## Decision Granting In Part Interim Costs Award[1]

On February 19, 2003, Peter and Ramona Loutos, as parents and natural guardians of P.A.L., III, a minor ("P.A.L."), filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program" or "Program").[2] ECF No. 1. Petitioners

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act.

allege that P.A.L. developed an autism spectrum disorder ("ASD") as a result of his receipt of the measles, mumps, and rubella ("MMR") vaccine and/or thimerosal-containing vaccines received from September of 1998 to December of 1999. An entitlement hearing is set for June of 2016, but Petitioners now seek an interim award of $26,450 for expert-related costs. *See* Mot. for Interim Payment of Expert Medical Witnesses, dated Dec. 31, 2014 (ECF No. 92) ("Costs App."). For the reasons stated below, I hereby grant in part and deny in part Petitioners' request for interim costs, awarding Petitioners $21,950 in interim costs.

## Brief Procedural History

This matter has been pending for more than ten years. The Loutoses originally filed a short form petition on February 19, 2003, as part of the Omnibus Autism Proceeding ("OAP"). ECF No. 1. Thereafter, Petitioners began filing medical records in support of their claim. *See, e.g.*, ECF Nos. 12, 15, and 19. Following the OAP's conclusion, on August 25, 2011, Petitioners' prior counsel filed a status report indicating that Petitioners now intended to allege that P.A.L. suffered from an underlying mitochondrial disorder and had scheduled an initial appointment for testing, in order to evaluate whether such a condition would lead them to amend their claim.[3] ECF Nos. 22 and 23. Shortly thereafter, on September 7, 2011, Petitioners' counsel withdrew from the case, and since that time Petitioners have been *pro se* litigants.

In 2014, the Loutoses filed two expert reports supporting their causation theory – one from Janet Kern, PhD (Pet'rs' Ex. 52), and a second from Lisa Rankin, MD (one of P.A.L.'s treating physicians) (Pet'rs' Ex. 53). ECF No. 82. Dr. Kern (a neuroscientist) opined in her report that P.A.L. suffered an adverse reaction to his vaccination within 48 hours, and that his symptoms subsequently progressed and worsened to include brain damage resulting in a diagnosis of encephalopathy (which she characterized as one of the most commonly reported vaccine adverse events). ECF No. 82-1 at 5-6. She further expressed the view that P.A.L. showed a progressive and sequential pattern of regression into ASD after his vaccinations at 15 months, and that the encephalopathy was a factor in his ASD (along with his mitochondrial dysfunction). *Id.*

Dr. Rankin's expert report similarly opines in favor of Petitioners' causation theory. Before filing an expert report, Dr. Rankin had also provided Petitioners with a "To Whom It May Concern" letter opining that P.A.L. suffered from a mitochondrial dysfunction that had been exacerbated by the MMR vaccine, resulting in his ASD. That letter was filed in August 2012, along with the results of P.A.L.'s mitochondrial dysfunction testing. ECF Nos. 52 and 53.

Petitioners filed the present interim costs application on December 31, 2014. ECF No. 92. Included with the application were expert invoices. *Id.* at 4-7. Respondent filed a pleading in reaction to Petitioners' application for interim costs on January 5, 2015, noting that any expert

---

[3] To date, Petitioners have not filed an amended petition in this case.

2

costs award should not be made until after the filing of Respondent's expert report,[4] as well as after the filing of each expert's curriculum vitae. ECF No. 93. Petitioners subsequently filed a motion on January 15, 2015, for suspension of this proceeding to allow them additional time to find counsel to represent them in this matter (ECF No. 97), and the motion was granted, suspending the case until February 19, 2015 (ECF No. 98).

During the suspension period, this matter was assigned to me. ECF No. 101. Following a status conference on March 10, 2015, I agreed to allow this case to remain suspended to allow Petitioners more time to find counsel, but I instructed Respondent in the intervening period to review and respond substantively to Petitioners' interim costs application (after Petitioners filed the missing curricula vitae, which they did on March 17, 2015). ECF Nos. 105 and 106. Respondent filed her substantive response on June 3, 2015. ECF No. 112 ("Opp."). During a subsequent July 13, 2015, status conference, I provided Petitioners with an opportunity to file a reply responding to Respondent's opposition to their motion for interim costs (ECF No. 115), and they did so on September 22, 2015. ECF No. 118 ("Reply"). This matter is now ripe for resolution.

**The Interim Costs Petition and Respondent's Objections**

The Loutoses request an interim award of costs totaling $26,450 for work performed by Drs. Kern and Rankin to date. This total sum breaks down to $25,200 for the services of Dr. Kern (based on an hourly rate of $300 per hour for 84 hours of work), and $1,250 for the services of Dr. Rankin (based on an hourly rate of $250 per hour for five hours of work). Petitioners' initial interim costs application argued that there is a reasonable basis for their claim (based on the submitted medical records) and that their good faith in filing the matter should be presumed. Costs App. at 2. They also contended that this matter has been protracted, and that bearing these expert costs poses an undue burden on them as *pro se* litigants. *Id.* at 3.

Respondent's opposition reluctantly acknowledges that special masters frequently permit the award of interim costs where good faith and reasonable basis for filing are present,[5] but (without contesting either good faith or reasonable basis) maintains that an interim award is inappropriate here, both because the experts lack the necessary qualifications to give a reliable opinion, and also because the experts expended unreasonable amounts of time in carrying out their functions. Opp. at 3-7. Thus, Respondent contends that Dr. Kern (who has a nursing background but lacks medical training and diagnostic expertise) does not offer a reliable expert opinion in

---

[4] Respondent filed an expert report from Gerald V. Raymond, MD, a neurologist and clinical geneticist, on January 6, 2015. ECF No. 94. In the report, Dr. Raymond disputed that P.A.L.'s vaccinations had anything to do with his autism and questioned the reliability of scientific evidence suggesting a relationship between vaccines and mitochondrial disorders resulting in autism, among other things. *Id.*

[5] Respondent does not dispute that Petitioners' claim was brought in good faith, and does not explicitly contest reasonable basis. Opp. at 2. Rather, Respondent (in a footnote) reiterates her "statutory objection" lodged in many similar cases that "[s]ection 15(e)(1) does not . . . authorize the interim costs requested here" based on her interpretation of *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

diagnosing or explaining any of P.A.L.'s illnesses or conditions, alleged or otherwise. *Id.* at 3. Moreover, Respondent notes that Dr. Kern "has no special training in diagnosing, treating, or evaluating mitochondrial disorders."[6] *Id*. Respondent lodges no objection to Dr. Kern's hourly rate, but maintains that the 84 hours she expended preparing an expert report in this matter were excessive. *Id.* at 4. Respondent specifically objects to 19 hours billed to performing legal research[7] as outside the scope of an expert's proper function. *Id*. at 4. She also questions the 37 hours that Dr. Kern billed for review of records and communications as excessive. *Id.* at 4-5.

Respondent similarly questions whether the Petitioners' other expert, Dr. Rankin, is qualified to opine on vaccine causation issues in this case, arguing that because no evidence has been provided as to Dr. Rankin's qualifications, compensation to her should be denied.[8] Opp. at 5. Given the nominal amount billed by Dr. Rankin, however, Respondent did not object to her hourly rate or the number of hours billed, leaving the resolution of this part of the interim costs application solely to my discretion. *Id.*

Petitioners' reply attempts to address the criticisms launched at each expert. In it, Petitioners argue that Dr. Kern's extensive research experience in neuroscience, along with her numerous peer-reviewed publications "focusing on biomarkers of susceptibility, oxidative stress, neurodegeneration, neuroinflammation, toxicity, risk factors in ASD, and brain changes related to mercury in neurodevelopmental disorders" render her facially qualified as an expert likely to provide a reliable opinion. Reply at 2-3. Petitioners also defended Dr. Rankin's qualifications. *Id.* at 4-5.

Petitioners then argue that the number of hours that Dr. Kern expended on this matter were reasonable given the circumstances of this case. Thus, Petitioners maintain that the hours spent by Dr. Kern on legal-related research and communications were intended to aid the report's preparation rather than to assist their prosecution of this claim, and that any legal "guidance" she needed to seek was reasonable given her lack of experience testifying in Vaccine Program cases. Reply at 4. Petitioners further argue that the time billed by Dr. Kern for review of records and communications was also reasonable in light of the case's status (a protracted matter involving *pro se* petitioners). *Id.*

---

[6] Respondent further argues that "[a]lthough Dr. Kern has published several articles related to the cause and treatment of ASD, several of the theories set forth in her articles, including the role of thimerosal exposure from vaccines as a cause of autism, have been discredited by credible scientific studies and rejected by this court in the [OAP]." Opp at 3.

[7] Based on my review and interpretation of Dr. Kern's billing records, I have determined that in fact 18 hours (rather than the 19 hours Respondent calculated) were devoted to legal research.

[8] Contrary to Respondent's assertion, however, a curriculum vitae from Dr. Rankin had, by the time of the filing of Respondent's Opposition, been filed. *See* ECF No. 106 (filed March 17, 2015).

**Analysis**

I.   *General Principles Regarding Attorney's Fees and Costs Awards*

Relevant Federal Circuit precedent[9] clearly permits the recovery of interim awards of attorney's fees and costs in Vaccine Program cases. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *see also Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 133 S. Ct. 1886 (2013); *McKellar v. Sec'y of Health and Human Servs.*, 101 Fed. Cl. 297, 302 (2011) ("interim fees are permitted even before an entitlement decision is made").

In *Avera*, the Federal Circuit discussed the conditions under which an interim fees and costs award may be appropriate, such as "where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352. But *Avera* did not define the precise circumstances in which an interim award is warranted, leading other special masters to observe that the standards for granting an interim fees award "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014) (citing *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010)). The United States Court of Federal Claims in *McKellar* suggested that regardless of how the *Avera* factors are applied, "*some* special showing" is necessary to justify an interim award. *McKellar*, 101 Fed. Cl. at 301.

Special masters have broad discretion in determining whether to award interim fees and costs. *See, e.g.*, *Small*, 2014 WL 308297, at *1 ("[i]t is clear that interim fees and costs need not be awarded in all circumstances"); *Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"). In exercising such discretion, special masters must still also determine if the other factors for obtaining an interim award (showing good faith and a reasonable basis for filing) have been established. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).[10]

---

[9] In this decision, I reference or rely upon the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit decisions are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

[10] Interim award requests receive different treatment from requests for fees and costs made by successful petitioners. The Vaccine Act specifically provides that successful petitioners are entitled to an award of reasonable attorney's fees and costs. Section 15(e). Unsuccessful petitioners may also recover attorney's fees and costs. *Fester*, 2013 WL 5367670, at *6 (citations omitted). But a requesting unsuccessful petitioner (which includes petitioners whose cases have not been adjudicated fully) must demonstrate that his petition was filed in good faith and had a reasonable basis. *Small*, 2014 WL 308297, at *1 (citing *Perreira v. Sec'y of Health & Human Servs.*, No. 90-847V, 1992 WL 164436, at *1 (Cl. Ct. June 12, 1992), *aff'd*, 27 Fed. Cl. 29 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994)). Ultimately, it is a petitioner's burden to demonstrate that requested attorney's fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 215 (2009); *Rupert v. Sec'y of*

5

Under the Vaccine Act, awards of compensation are to cover attorney's fees and other costs *incurred* in proceedings associated with the petition. Section 15(e)(1) (emphasis added). The word "incurred" is not defined by the statute but it has been interpreted to mean "legally liable to pay." *Black v. Sec'y of Health & Human Servs.*, 33 Fed. Cl. 546, 550 (1995).

## II. *Appropriateness of Interim Costs Award in This Case*

As noted above, good faith and reasonable basis for a claim are threshold requirements for an interim costs award. Respondent does not dispute that Petitioners filed their claim in good faith, nor do I find that good faith is absent. Whether this claim has a reasonable basis, however, is more difficult to resolve. Although Respondent does not explicitly contest reasonable basis, she does suggest that Petitioners' experts lack the qualifications to offer reliable opinions (thus implicitly suggesting that the claim itself may lack the necessary support required to make a reasonable basis showing). Opp. at 2-3 and 5.

In *Chuisano v. United States*, 116 Fed. Cl. 276, 285 (2014), the Court of Federal Claims noted that "[a] 'reasonable basis' standard that is not rigidly defined – as amorphous as it may be – is consistent with the Vaccine Act as a whole," which was intended "to award compensation 'to vaccine-injured persons quickly, easily, and with certainty and generosity,'" and which features a generous attorney's fees provision in keeping with that intent. *Id.* (internal citations omitted). Thus, in attempting to carry out such policy goals, special masters have tended to be lenient when determining whether a claim has a reasonable basis. *Austin v. Sec'y of Health & Human Servs.*, No. 10–362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013). In establishing a reasonable basis for the claim,[11] however, a "petitioner must rely on more than speculation." *McKellar*, 101 Fed. Cl. at 303-05 (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994)) ("unlike good faith, there is no presumption of a petition's reasonableness").

The inquiry into a claim's reasonable basis thus centers "not [on] the likelihood of success [of a claim] but more [on] the feasibility of the claim." *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Other special masters have considered whether a claim has support in the contemporaneous medical records and/or a medical opinion, or if the petitioner can demonstrate at least that "fundamental inquiries" were made to locate evidentiary support for the claim. *Melbourne v. Sec'y of Health & Human Servs.*, No. 99-694V, 2007 WL 2020084, at *6 (Fed. Cl. Spec. Mstr. June 25, 2007); *Di Roma*, 1993 WL 496981, at *2.

---

*Health & Human Servs.*, 52 Fed. Cl. 684, 686 (2002). The same burden applies to justifying requests for an award of costs. *Perreira*, 27 Fed. Cl. at 34.

[11] Preponderant evidence is not required to establish the reasonable basis of a petitioner's claim. *Chuisano*, 116 Fed. Cl. at 287.

Based on my review of this case and the materials filed in connection with it, including the Petitioners' two expert reports, I find that there is a reasonable basis for the claim at the present juncture. This is far from the only post-OAP active Vaccine Program case asserting that a child suffered an encephalopathic event after vaccination, and/or that a vaccine significantly aggravated an underlying mitochondrial disease, resulting in the development of an ASD. *See, e.g., Holt v. Sec'y of Health & Human Servs.*, No. 05-0136V, 2015 WL 4381588 (Fed. Cl. June 24, 2015) (alleging that the hepatitis B vaccinations that her daughter received either alone or in combination caused or significantly aggravated her subsequently diagnosed developmental, neurological, or mitochondrial issues); *Bushnell v. Sec'y of Health & Human Servs.*, No. 02-1648V, 2015 WL 4099824, at *6 (Fed. Cl. June 12, 2015) (alleging that a mitochondrial disorder caused an enzyme deficiency which led to an accumulation of thimerosal from vaccines administered which in turn lead to ASD). Although such claims have not been successful, they were still litigated. The Petitioners have identified sufficient expert opinion and relevant literature to support the claim's feasibility.[12]

The next question presented by Petitioners' interim application is whether the case's overall circumstances justify such an award. In making that determination, I will give some consideration to the *Avera* factors (without applying them rigidly). *See generally Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (discussing considerations when making a determination regarding whether to award interim fees and costs). First, the case, now over 12 years old, fits the definition of "protracted." Second, I also find that *pro se* petitioners like the Loutoses easily meet *Avera's* undue burden requirement, as the total costs incurred to date by both experts reflect sums that are reasonably understood to be burdensome to private individuals when carried over a long period of time. *See also Fester*, 2013 WL 5367670, at *15 (in evaluating whether a petitioner has suffered "undue hardship," the "Circuit appeared to focus on the hardship of carrying unreimbursed costs for extended periods rather than the financial situation of the petitioner or counsel"). Finally, I deem the total sum of costs incurred for both experts to be sufficiently high to merit reimbursement before hearing.

### III.   *Reasonableness of the Interim Costs Requested*

Vaccine Program petitioners are entitled to reimbursement for costs that were reasonably expended during the course of the litigation, including expert-related costs. *Perreira*, 27 Fed. Cl. at 34. The burden of demonstrating that costs incurred were reasonable falls on a petitioner. *Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004) (quoting *Comm. Heating & Plumbing Co. v. Garrett III*, 2 F.3d 1143, 1146 (Fed. Cir. 1993)). Special masters can exercise broad discretion in evaluating the reasonableness

---

[12] In finding that reasonable basis for the claim exists at the present time, I am explicitly not determining that the Petitioners' experts have offered reliable expert opinions. That determination will be made at trial, after I hear the experts testify. But the possibility that I might later determine that Drs. Kern and/or Rankin have offered unreliable opinions need not dissuade me from permitting an interim award based on the present circumstances, such as the fact that the Petitioners are *pro se* claimants.

of requested expert costs. *Perreira*, 27 Fed. Cl. at 34; *Chen Bou v. Sec'y of Health & Human Servs.*, No. 04-1329V, 2007 WL 924495, at *7 (Fed. Cl. Spec. Mstr. Mar. 9, 2007).

### A. The Experts' Qualifications are Not Grounds for Denying an Award

Respondent challenges the experts' scientific and/or medical qualifications to offer the opinions they assert in their reports, suggesting that their lack of expertise militates against an interim award. Neither expert appears to have testified in a Vaccine Program case before, so I cannot evaluate how they have been received in the past by other special masters. But based on their curricula vitae alone, it is evident that Petitioners' experts possess backgrounds and experience similar to other experts who have testified regarding vaccine causation of ASDs or encephalopathies. For instance, Dr. Kern received her PhD in cognition and neuroscience from the University of Texas at Dallas in 1999, and has published numerous articles in peer-reviewed journals on topics pertinent to this case, including oxidative stress, toxicity, risk factors in ASD, and brain changes related to mercury in neurodevelopmental disorders. *See* ECF No. 99; *see also*, *Miller v. Sec'y of Health & Human Servs.*, No. 02-235V, 2015 WL 5456093, at *10 (Fed. Cl. Spec. Mstr. Aug. 18, 2015) (a doctor with a background in neurology and pediatrics who had peer-reviewed publications on ASD and related topics was highly qualified to opine on the cause of ASD and whether a child had ASD, or a mitochondrial disorder masquerading as ASD); *Snyder v. Sec'y of Dep't of Health & Human Servs.*, No. 01-162V, 2009 WL 332044, at *9, *11 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *mot. for review den'd*, 88 Fed. Cl. 706 (2009).

Petitioners' other expert, Dr. Rankin, received her MD from University of Miami in 1996, has been licensed to practice medicine in the state of Florida since 1999, and is currently a physician at The Brain Training Center in Port St. Lucie, Florida with special expertise in ASD. ECF No. 106 at 4; *see also Mooney v. Sec'y of Health & Human Servs.*, No. 05-266V, 2014 WL 7715158, at *14 (Fed. Cl. Dec. 29, 2014) (awarding $250 per hour to a treating physician who provided a four-hour medical consultation in a former OAP case involving an encephalopathy). Moreover, Dr. Rankin was one of P.A.L.'s treaters, and it is well established that treater opinions are to be specifically considered by special masters when making determinations regarding vaccine causation. *See, e.g.*, *Moberly*, 592 F.3d at 1325 (although evidence from a treating physician regarding causation is not required, such evidence can be very probative). Dr. Rankin's testimony would therefore be heard even if she were not agreeing to act as an expert in the matter.

In any event, questions about the overall qualifications of these experts, or whether they offer persuasive opinions, go to the weight their opinions should be given under the standard set forth in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) rather than whether it is reasonable to compensate them for assisting the Petitioners. *See Fester*, WL 5367670, at *13. In some cases, where questions are raised about the overall reliability of an expert opinion or an expert's professional qualifications to offer it, it may make sense to wait until the experts have testified before compensating them, so that the special master can evaluate if retention of the experts was reasonable. But I find the present circumstances (*pro se* petitioners in a protracted case) override

such concerns here, even if Respondent's suspicions about the likely value of these experts' opinions prove to be correct after hearing.

B.  **Reasonableness of Requested Costs**

I must now calculate the interim costs award based on the reasonableness of each expert's work performed in this matter. The lodestar method is utilized to calculate what constitutes a reasonable fee for an expert in a Vaccine Program case. *Simon v. Sec'y of Health & Human Servs.*, No. 05–941V, 2008 WL 623833, at *1 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). The number of hours reasonably expended by the expert[13] is multiplied by a reasonable hourly rate. *Simon*, 2008 WL 623833, at *1. The petitioner bears the burden of demonstrating the reasonableness of the expert's hourly rate and the reasonableness of the number of hours that the expert expended on the case. *Id.* at *2. A special master may decline to award expert-related costs where the petitioner fails to provide a sufficient explanation of the work performed by an expert or that expert's qualifications. *See Doe v. Sec'y of Health & Human Servs.*, No. 02-411V, 2011 WL 6941671, at *8 (Fed. Cl. Spec. Mstr. Oct. 26, 2011).

In determining whether a proposed hourly rate is reasonable, the special master may consider "the witness's area of expertise; the education and training required to provide him the necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; the cost of living in the expert's geographic area; and any other factor likely to assist the undersigned in balancing the various interests in the case." *Baker v. Sec'y of Health & Human Servs.*, No. 99–653V, 2005 WL 589431, at *3-5 (Fed. Cl. Spec. Mstr. Feb. 24, 2005), *mot. for review den'd*, 2005 WL 6122529 (Fed. Cl. June 21, 2005).

Respondent does not question the reasonableness of the hourly rate requested by either expert, and I find the requested rates to be acceptable given their professional backgrounds, and that the rates are comparable to those charged by similarly-situated experts offering testimony in Vaccine Program cases. *See, e.g.*, *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding an hourly rate of $400 to an expert in neurology); *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *8 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (expert did not have "specialized knowledge and experience" in the case to justify his requested hourly rate of $500 and, accordingly, rate was reduced to $400 per hour); *Allen v. Sec'y of Health & Human Servs.*, No. 11-051V, 2013 WL 5229796, at *2 (Fed. Cl. Aug. 23, 2013) (pre-approving a rate of $500 per hour for an expert in neurology and immunology who also had expertise directly relevant to a disputed issue); *Chen Bou*, 2007 WL 924495, at *10, *16 (awarding an expert $350 per hour based in part on his poor

---

[13] The special master's own experience and judgment, as well as the amount of time that an expert with comparable skills would have spent on the task in a comparable case, are relevant considerations when making determinations regarding the number of hours reasonably expended by an expert on a case. *Caves v. Sec'y of Health & Human Servs.*, No. 07–443V, 2012 WL 6951286, at *12 (Fed. Cl. Spec. Mstr. Dec. 20, 2012), *mot. for review den'd*, 111 Fed. Cl. 774 (2013).

performance in testifying at hearing). Accordingly, I will compensate Dr. Kern for hours reasonably expended on this litigation at her requested hourly rate of $300 per hour, and I will compensate Dr. Rankin for hours reasonably expended on this litigation at her requested hourly rate of $250 per hour.

The next issue is whether the time billed by both experts is fully or only partially compensable. Respondent does not contest the reasonableness of the five hours that Dr. Rankin spent researching and preparing an expert report in this matter. I similarly find that the amount of time that Dr. Rankin spent on this matter was reasonable. I therefore will approve an interim award of costs in the full amount requested for Dr. Rankin.

Respondent does, however, question some of the hours that Dr. Kern spent reviewing medical records, performing research, and preparing an expert report in this matter. Respondent specifically challenges time spent by Dr. Kern on two types of tasks – performing legal research and reviewing medical records and communication.[14] Regarding the former, my review and interpretation of the expert invoices reveal that Dr. Kern devoted approximately 18 hours to performing legal-related research and communication.

In a case being litigated by *pro se* claimants, it is foreseeable that an expert might need to spend some time determining the legal requirements of an expert report, as a *pro se* litigant will lack the knowledge a seasoned Vaccine Program attorney would possess and could provide to that expert to guide the preparation of his report. Nevertheless – Vaccine Program experts are not retained to offer their views as to the law applicable to a claim, for that is the exclusive role of the attorneys in the case and/or the special master. *Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1379 n.6 (2008) (affording no weight to affidavit of former government official interpreting thrift regulations). And an expert should similarly not be compensated for getting "up to speed" on the Vaccine Program more generally. Rather (and despite the attendant burdens), *pro se* litigants are responsible for informing their expert as to what is required, in the same manner that counsel are – just as *pro se* litigants are more generally responsible for prosecuting their own claims in accordance with the Act. *Bass v. Sec'y of Health & Human Servs.*, No. 05-901V, 2006 WL 5631321, at *2 (Fed. Cl. Spec. Mstr. June 15, 2006) ("being a *pro se* litigant does not relieve the petitioner of his burden to fulfill the statutory requirements of the Vaccine Act").

I therefore determine that the 18 hours that Dr. Kern devoted to conducting legal research was excessive, and reduce the compensable time devoted to such matters by approximately 83 percent, awarding only 3 hours for work performed by her in this category (a reduction of 15 hours, or $4,500).

With respect to the second challenge, the invoices submitted in support of this costs application indicate that between March and October of 2014, Dr. Kern devoted approximately 37

---

[14] I find the amount of time Dr. Kern spent on other tasks to be reasonable, and as Respondent has not specifically objected to such tasks, I do not address that time in my decision.

hours to reviewing medical records and communications. Given the extensive nature of the medical records filed in this case, I find the amount of time that Dr. Kern devoted to these tasks to be reasonable, especially given the complexity of the claim herein, and I will fully compensate Dr. Kern for this time.

Accordingly, Petitioners will receive fees for 84 hours of work performed by Dr. Kern, minus 15 hours spent on legal issues, compensated at an hourly rate of $300 per hour, for a total of $20,700 (69 hours x $300 per hour).

## CONCLUSION

For the reasons stated above, I hereby **GRANT IN PART** and **DENY IN PART** Petitioners' application for expert-related costs in this case. Based on all of the above, the following chart sets forth the total calculation of Petitioners' award:

| Expert | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Dr. Kern's Fees | $25,200 | $4,500 | $20,700 |
| Dr. Rankin's Fees | $1,250 | $0 | $1,250 |

I reduce Petitioners' interim costs application by the amount of $4,500, thereby awarding Petitioners a total of $21,950. This amount reflects the total amount awarded for Petitioners' interim application for attorney's fees and costs. **Accordingly, an award shall be made in the form of a check jointly payable to Petitioners in the amount of $21,950.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[15]

**IT IS SO ORDERED.**

                                                                                Brian H. Corcoran
                                                                                Special Master

---

[15] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.